W.F. Samuel **HOPMEIER** and Patricia Hopmeier, Plaintiffs–Appellants,

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY OF MID–WEST, and First American Title Insurance Company, Defendants–Respondents.**

No. 63108.

Missouri Court of Appeals, Eastern District, Division Three.

July 6, 1993.

Stephen L. Beimdiek, Margaret Muserlian Mooney, St. Louis, for plaintiffs-appellant.

Michael Aubrey Clithero, St. Louis, for defendants-respondent.

GARY M. GAERTNER, Presiding Judge.

Appellants, W.F. Samuel and Patricia Hopmeier, appeal an order of summary judgment entered in favor of respondents, First American Title Insurance Company and First American Title Insurance Company of Mid–West, in the Circuit Court of St. Louis County. We affirm.

In February, 1980, appellants purchased a parcel of real estate located at 1209 South Brentwood Blvd. Contemporaneously therewith, appellants entered into a contract to guarantee title with St. Paul Title Insurance Company. Appellants closed on the property on May 9, 1980.

Almost six years later, around January 29, 1986, an attorney noticed a discrepancy in the legal description of the property between the letter report of the title insurance company and the warranty deed conveying the property. The attorney, Mr. Steven Cupples, contacted Mr. Michael Blaney of First American Title Insurance Company (the successor to St. Paul Title Insurance Company) to see which description was correct.

On February 5, 1986, Blaney contacted appellants to discuss the discrepancy and to request a copy of the property's survey. The next day, appellant Samuel Hopmeier and Cupples discussed the matter. The original letter report agreed with the survey, while the deed agreed with the title insurance policy itself.

On February 28, 1986, appellant told Cupples, his attorney, about his conversation with Blaney. Blaney had been unable to confirm or disprove any error because he could not locate the property's abstract. Cupples told Blaney about the letter report and suggested that he locate the abstract to resolve the matter. On March 18, the two spoke again. Blaney suggested changing the legal description of the property on the deed, re-acknowledging the grantors' signatures and re-recording the deed. Cupples asked Blaney to write appellants and explain this procedure. Appellants received the letter on March 19, 1986.

Cupples, however, believed changing the legal description of the property would be inappropriate, since the original grantors could still be found. Cupples therefore advised appellant to contact the original grantors and obtain a quitclaim deed from them containing the corrected legal description. Sometime after March 19, 1986, appellant contacted the original grantors and they refused to sign a quitclaim deed.

On July 23, 1986, Cupples spoke with Blaney about Blaney's recommendation to change the legal description of the property. Cupples reiterated his belief that the grantors' consent was needed and that appellant was getting it. Appellant never procured the quitclaim deed; nothing further was done for several years.

On November 29, 1989, appellants contracted to sell the property at issue to the Galleria Redevelopment Corp. Appellants initiated an action to quiet title on December 6, 1989, in the Circuit Court of St. Louis County. Closing was set for April 1, 1990, but appellants were unable to close

the transaction on that date. On August 9, 1990, the court ruled in favor of appellants on their quiet title claim. On September 19, 1990, appellants finally closed the sale of the property.

On March 6, 1991, appellants filed a suit in three counts against First American Title Insurance Company claiming breach of contract, negligence and vexatious refusal to pay damages incurred as a result of the late sale closure. On October 20, 1992, respondents' motion for summary judgment on statute of limitations grounds was heard and sustained. Summary judgment was entered against appellants. On October 30, 1992, appellants filed a motion for reconsideration, the reason being that they had suffered no damages and therefore could not maintain an action until March 18, 1986. This motion was overruled by the trial court after argument on November 12, 1992. This appeal ensued.

■■■ The parties agree that the applicable statute of limitations in the instant case is five years. RSMo § 516.120 (1986). The only real dispute before us is when the action accrued pursuant to RSMo § 516.100 (1986), concerning "when the damage ... is sustained and is capable of ascertainment." *Id.* We review orders of summary judgment in the light most favorable to the party against whom summary judgment was entered. *Oetting v. Mo. Osteopathic Foundation*, 806 S.W.2d 150, 153 (Mo. App., W.D.1991). If the grant of summary judgment is sustainable on any theory, then the action of the trial court will be affirmed. *Id.*

Appellants first allege the record does not support a finding that they knew of the error on the face of the deed before March 5, 1986. We disagree. Appellants' sworn answers to respondents' interrogatories state:

[Appellants] first learned of error in legal description [sic] on February 5, 1986 when Michael Blaney of First American Title Insurance Company called W.F. Samuel Hopmeier. Those persons having knowledge of that error at that time were Michael Blaney and W.F. Samuel Hopmeier.

Appellants' response to this discovery was to find a copy of the property's correct legal description, which they sent to Blaney on or about February 5, 1986. Appellants' therefore cannot deny their knowledge of the error on the deed as of February 5, 1986. They knew of it by their own admission. Point denied.

■■■ Next, appellants challenge the bar of the statute of limitations itself. They claim less than five years passed between accrual of the cause of action and the filing of their petition. Again, we must disagree. In Missouri, a cause of action initially accrues when a party could first maintain the action successfully. *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702, 705 (Mo.App., St.L.D.1978). RSMo § 516.100 (1986) provides:

... the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, ...

It is important to note that the phrase "capable of ascertainment" refers to the fact of damage, and does not mandate knowledge of the precise amount. *Southern Cross Lumber v. Becker*, 761 S.W.2d 269, 271 (Mo.App., E.D.1988). The fact that respondents did not admit the error until March 18, 1986, is irrelevant. The important point is that appellants were aware of the fact of damage by March 5, 1986, even if they did not know its full extent. See also *Earls v. King*, 785 S.W.2d 741, 744 (Mo.App., S.D.1990).

■■■ Appellants' assertion that they sustained no damage and therefore could not maintain an action until the grantors refused to sign a quitclaim deed is also fallacious. As a result of the error in the property's description, appellants had a diminished interest in land they thought they owned outright. Such a diminution is damage, regardless of the measures taken to correct it. As respondents correctly point out, if we were to accept appellants' position, no suit would ever accrue until all possibility of settlement expired. We know that this is simply not the way the system

works. A suit could have been maintained without first approaching the original grantors. Point denied.

The court's grant of respondents' motion for summary judgment is hereby affirmed.

SMITH and STEPHAN, JJ., concur.