**Kenneth Lynn CAPLES and Sandra Caples, Plaintiffs/Appellants,**

v.

**EARTHGRAINS COMPANY, A Delaware Corporation, Defendant/Third Party Plaintiff/Respondent,**

v.

**EAGLE BRAND SALES, INC., Third Party Defendant.**

**No. ED 77704.**

Missouri Court of Appeals, Eastern District, Division Two.

April 17, 2001.

Martin L. Perron, Maria V. Perron, St. Louis, MO, for appellant.

John Wendler, Edwardsville, IL, for Earthgrains Attorney.

Russell F. Watters, St. Louis, MO, for Eagle Brand Sales Attorney.

WILLIAM H. CRANDALL, JR., Judge.

Plaintiffs, Kenneth Caples and Sandra Caples, appeal from the judgment, entered pursuant to a jury verdict, in an action for

personal injuries against defendant, Earthgrains Company. We affirm.

Plaintiff[1] was employed by Third Party Defendant, Eagle Brand Sales, Inc. (hereinafter Eagle Brands),[2] a corporation which sold snacks such as pretzels, potato chips, crackers, and nuts. Plaintiff worked as a warehouseman/forklift operator. The building where plaintiff worked was owned by defendant, Earthgrains Company (hereinafter Earthgrains), a separate corporation. Earthgrains used part of the building as a distribution center for its breads and there were offices in an adjoining building. Pursuant to a written lease with Earthgrains, Eagle Brands used part of the building and basement as a warehouse and distribution center and also had offices in an adjoining building. The lease described the leased area as "approximately twenty-five thousand square feet of the Colonial ... building," but did not provide any other description of the leased premises. Paragraph 7 of the lease set forth the duties of Earthgrains and Eagle Brands with regard to repairs and maintenance of the leased area:

> 7. REPAIRS AND MAINTENANCE: The Landlord shall be responsible for the repair and maintenance of all structural components of the building specifically including but not limited to the roof, exterior walls ... and foundation, and shall maintain the heating, air conditioning, plumbing and electrical systems and the driveway(s), parking areas, curbs, and walks (including snow removal), if any. Landlord shall have the right at all reasonable times, upon reasonable notice, during the business hours of Tenant, to enter upon the Premises for the purpose of examining the condition of the Premises or performing repairs. If reasonable vehicular access for Tenant or Tenant's customers to the Premises is obstructed or blocked due to repairs, reconstruction, or otherwise by Landlord, then to the extent the operation of Tenant's business is adversely affected, a proportionate and equitable reduction or abatement of rent shall be made until access is reestablished.

This cause of action concerns two separate accidents. The first incident occurred on August 11, 1994, while plaintiff was working in the area where Eagle Brands route trucks and vans were loaded and unloaded (hereinafter loading floor). He operated a forklift, moving pallets of stock onto the loading floor where the route drivers picked them up. A drain ran down the middle of the loading floor. The drain was covered with a metal grate that was not attached to the drain. The back tire of plaintiff's forklift went into a gap in the drain where the grate was moved aside, and then bounced out. The underside of the forklift hit the floor, jarring plaintiff. The second incident occurred on August 25, 1995, in the basement storage area of the building. Plaintiff was moving stock that was stored there with a forklift when one of the tires hit a "pothole" in the floor of the basement storage area. As a result of each incident, plaintiff suffered injuries and later underwent two separate surgeries to correct back problems.

Plaintiff brought the present action against Earthgrains. His petition was in four counts: Counts I and II related to the August 1994 and August 1995 occurrences,

---

1. We refer to plaintiff in the singular form, because the claim of Sandra Caples, plaintiff's wife, is for loss of consortium and is therefore derivative of his.

2. The trial court granted plaintiff's motion to dismiss for lack of subject matter jurisdiction as to Eagles Brands. Plaintiff does not appeal from that judgment and Eagle Brands is not a party to this appeal.

respectively; and Counts II and IV related to plaintiff's wife's claims for loss of consortium for each of the incidents. Plaintiff alleged, in part, Earthgrains's negligence in failing to maintain the premises in a reasonably safe condition. The jury returned verdicts in favor of Earthgrains on each of the counts and the trial court entered judgment in accordance with the verdicts. Plaintiff appeals.

■ In his first point, plaintiff contends the trial court erred in refusing his tendered verdict directing instructions, Instruction A relating to the August 1994 injury on the loading floor and Instruction B relating to the August 1995 injury in basement storage area. The two verdict directing instructions submitted by the court read as follows:

### Instruction Number 9

In your verdict you must assess a percentage of fault to defendant Earthgrains Company ... if you believe:

First, there was excess space between the grates in the loading floor in August 1994 and as a result the loading floor was not reasonably safe, and

Second, the loading floor was in the possession and control of defendant for the purpose of making repairs and was used by the tenant of defendant with its consent, and

Third, defendant knew, or by using ordinary care could have known, of this condition, and

Fourth, defendant failed to use ordinary care to make the floor reasonably safe, and

Fifth, such failure directly caused or directly contributed to cause damage to plaintiff Kenneth Caples.

### Instruction Number 17

In your verdict you must assess a percentage of fault to defendant Earthgrains Company ... if you believe:

First, there was a hole in the concrete floor of the basement storage area in August 1995 and as a result the floor was not reasonably safe, and

Second, the basement storage area was in the possession and control of the defendant and was used by tenant of defendant with its consent, and

Third, defendant knew, or by using ordinary care could have known, of this condition, and

Fourth, defendant failed to use ordinary care to make the floor reasonably safe, and

Fifth, such failure directly caused or directly contributed to cause damage to plaintiff Kenneth Caples.

These instructions to the jury submitted the issue of whether the area of the building where each injury occurred was under the control of Earthgrains. The trial court refused the two verdict directing instructions tendered by plaintiff, which were almost identical to the instructions submitted, with the exception that plaintiff omitted the second paragraph containing the issue of Earthgrains's control of the areas of plaintiff's injuries. Plaintiff contends the tendered instructions properly omitted the second paragraph because each area of injury was a "common area" as a matter of law.

■ Plaintiff's instructions were patterned on MAI 22.05 [1981 Revision], as were the instructions submitted by the trial court. The Notes on Use for MAI 22.05 provided as follows:

This instruction is to be used only where the injury occurred in an area where landlord had admittedly retained possession and where plaintiff has a

right to be, such as a common stairway, hall, or yard.

If there is a dispute as to whether the site of the injury was an area in landlord's control, the additional issue should be hypothesized in the following form:

Second, the stairway was in the possession and control of defendant and was used by tenants of defendant with his consent.

Existing "Second" would then be renumbered "Third".....

Thus, we must decide if a dispute existed as to whether the two places in the building where plaintiff was injured were areas where Earthgrains retained possession and control. If as a matter of law these areas constituted common areas, the court improperly refused plaintiff's tendered instructions; but if a controversy existed as to the status of the areas, the trial court properly included the second paragraph in the verdict directing instructions submitted to the jury. In determining whether the evidence was sufficient to support a jury instruction, the evidence is viewed in the light most favorable to the offering party; and we give the offering party the benefit of all reasonable inferences. *Linton v. Missouri Highway and Transp. Comm'n,* 980 S.W.2d 4,6 (Mo.App. E.D.1998).

■ Generally, a landlord does not owe a duty to his tenant or to a tenant's invitee; and is not liable for personal injury caused by a dangerous condition of the premises. *Dean v. Gruber,* 978 S.W.2d 501, 503 (Mo.App. W.D.1998). The recognized exceptions to this rule are (1) a hidden dangerous condition; (2) the injury occurs in a common area; and (3) where the landlord has a contractual obligation to make repairs and sufficient control or access to the property. *Id.* Plaintiff argues he was entitled to submit his case under

the common area theory as a matter of law.

■ A "common area" is one reserved by the landlord for the common use of more than one tenant or by himself and a tenant or tenants, as opposed to an area demised to a particular tenant for that tenant's sole and exclusive use. *Id.* If an area is solely used by one tenant, it is not a "common" area. *Id.* Retention of control over the premises where the injury occurred is an essential element of liability. *Fitzpatrick v. Ford,* 372 S.W.2d 844, 850 (Mo.1963). The theory is that the portion of the premises subjected to common use is not part of the tenant's leasehold estate, the landlord not having let it to any one of the tenants but having reserved control to himself. *Id.* at 849.

In *Fitzpatrick v. Ford,* the plaintiff, the tenants' son, brought an action against the landlords for injuries sustained when the porch of a leased farmhouse collapsed on him. *Id.* at 845. The plaintiff's evidence was that the tenants did not have the use of the entire house because the landlords kept a specific bedroom for their use as they saw fit. *Id.* The landlords kept clothes in that bedroom, used the bedroom when the tenants were not home, kept horses on the farm, and did not ask the tenants' permission to come in and out of the house. *Id.* at 846. The tenants had used the bedroom only once during the four years they occupied the house, subject to the landlords' objection. *Id.* In contrast, the landlords contended they let the entire farm, with no reservation. *Id.* at 847. The Missouri Supreme Court held that it was error for the trial court to give a verdict directing instruction which did not require a finding of reservation of control of the porch by the landlords, an essential fact upon which liability turns under the common use rule. *Id.* at 849. The supreme court concluded that where

the issue of control is in dispute, the plaintiff may not omit from his verdict directing instruction a requirement of a finding of reservation of control over that part of the premises where the injury occurred. *Id.* at 850.

In the instant action, plaintiff relies on the following evidence to support the existence of a common area. The employees of both Eagle Brands and Earthgrains used the same entrances, exits, and parking lot. Employees of both companies shared the same lunchroom and restrooms. In addition, the lease did not specify which part of the building was conveyed to Eagle Brands and all parts of the building were available equally to Earthgrains and Eagle Brands. Yet, these facts do not establish that Eagle Brands gave up its right to the exclusive possession and control of either the loading floor or the basement storage area or that Earthgrains reserved a right to the areas where plaintiff was injured. Thus, Eagle Brands did not establish as a matter of law that the areas in which the injuries occurred were common areas. Further, Earthgrains contested that either area in which plaintiff was injured was a common area. The common area issue was properly submitted to the jury in the verdict directing instructions, because there was a dispute as to whether the site of either injury was an area in Earthgrains's control. Plaintiff's first point is denied.

■ In his second point, plaintiff asserts the trial court erred when it refused to give his tendered Instruction C relating to the August 1994 injury on the loading floor and Instruction D relating to the August 1995 injury in the basement storage area. Both instructions were again patterned on MAI 22.05. But, the second paragraphs inserted into the pattern instructions submitted separate and alternative theories of liability, basing Earthgrains's liability ei-

ther on common area or on the duty to repair.

### Instruction Number C

* * *

Second, either:
> The loading floor was in the possession and control of defendant and was used by tenant of defendant with its consent, or
>
> The defendant retained the right to enter or leave the loading floor for the purpose of making repairs....

### Instruction Number D

* * *

Second, either:
> The basement storage area was in the possession and control of the defendant and was used by tenant of defendant with its consent, or
>
> The defendant retained the right to enter or leave the basement storage area for the purpose of making repairs....

Having determined in the first point that the court properly submitted the issue of common area to the jury, the only question remaining is whether the court should have submitted to the jury the issue of Earthgrains's duty to repair as an alternative theory of liability.

■ Generally, the landlord is under no obligation to the tenant to repair unless there is a contract creating a duty to repair. *Dean,* 978 S.W.2d at 503. Plaintiff asserts that under Paragraph 7 of the lease Earthgrains had the obligation to make repairs and the right to enter and inspect the premises. Paragraph 7 of the lease required Earthgrains to maintain the "structural components" of the building, such as the roof, exterior walls, and foundation; as well as to maintain the heating,

air conditioning, plumbing, electrical, driveways, parking areas, and walks. It did not specifically require Earthgrains to repair those areas in which plaintiff was injured. Thus, there was no express agreement that Earthgrains make repairs to the grates on the loading floor or to the floor in the basement storage area.

 Where the landlord retains partial control over the leased premises for the purpose of making repairs, however, the landlord is then obligated to make such repairs and to keep the premises in a reasonably safe condition for the intended use. *Dean,* 978 S.W.2d at 503. The landlord's duty is premised on his retention of control of the property and not merely on the obligation to make repairs or the right to enter the premises:

> The possession or control which must be shown in order to make a landlord liable under this rule is not to be found merely in the obligation of the landlord to make repairs or the right to enter the premises. There must be something more—some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises; some substantial evidence of a sharing of control as between landlord and tenant.... It is sufficient that he retained a general supervision over the premises for a limited purpose such as the making of repairs or alterations, and the right to enter the premises and make repairs upon his own initiative and responsibility.

*Lemm v. Gould,* 425 S.W.2d 190, 195 (Mo. 1968) (citation omitted).

*Lemm v. Gould* interpreted the relationship between the landlords' retention of control of the premises and their duty to make repairs. In that case, the landlords kept a separate key to the apartment " 'to do any repairs they might think necessary.' " *Id.* at 194. They could enter the apartment when the tenants were not at home. *Id.* The Missouri Supreme Court concluded that under the law the landlords had a duty to maintain the porch from which the tenants' child fell in a reasonably safe condition for the use intended. *Id.* at 197. The court reasoned that the landlords used their key to gain access to the apartment without the tenants' permission and to make repairs without consulting tenants. *Id.* at 195. Thus, evidence of the landlord's "free access to the premises" for the purpose of making repairs was evidence of a sharing of control between landlords and the tenants and was sufficient to hold the landlords liable for the injuries sustained by the plaintiff. *Id.*

In *Nenninger v. Trustees of Oran Life Tabernacle Church,* 789 S.W.2d 530, 537 (Mo.App.1990), there was uncontroverted evidence that the landlords retained no key to the apartment and there was no evidence that the landlords entered the tenants' apartment without permission to do so. *Id.* Although the landlords did make repairs to the premises, the appellate court concluded that the making of some repairs did not establish that the landlords exercised control and dominion over the apartment. *Id.* The appellate court held that the evidence was insufficient to make a submissible jury issue regarding the landlords' duty to repair. *Id.*

Here, plaintiff relies on the fact that Earthgrains had "unlimited access" to the building and actually made repairs in the areas where he was injured. Viewing all the factual inferences in plaintiff's favor, there were no facts alleged which would allow a jury to infer that Earthgrains's control of the premises was to such a degree that would demonstrate a duty for Earthgrains to make repairs. Ear-

thgrains's access to the premises leased to Eagle Brands was not unfettered. According to Paragraph 7 of the lease, Earthgrains reserved the right to inspect the premises and to make repairs "at all reasonable times, upon reasonable notice, during the business hours." There was no evidence that Earthgrains entered the premises on its own initiative to make repairs. The fact that Earthgrains made repairs to the property prior to plaintiff's injuries did not establish control, absent other evidence. *See Nenninger,* 789 S.W.2d at 532. The same is true for repairs made after plaintiff's injuries. *See Mitchell v. O'Hearne,* 795 S.W.2d 603, 605 (Mo.App. E.D.1990). Under the facts of this case, there was insufficient evidence to support a submission to the jury of Earthgrains's duty to repair either the grate on the loading floor or the floor of the basement storage area. Plaintiff's second point is denied.

In his third point, plaintiff asserts the trial court erred in admitting into evidence a hospital record pertaining to an emergency room visit in May 1996. He argues the writing under "Nurses Notes" on the second page of the hospital record that he fell through a roof and landed on his "buttocks" contradicted his trial testimony that he fell through a rotten floor board on a porch and suffered abrasions to his leg. He also claims that this entry was in conflict with the history recorded on the first page of the hospital record. Plaintiff and Earthgrains stipulated that the medical record was qualified as a business record. Yet, plaintiff objected at trial to the admission of the hospital record on the basis that the document was internally inconsistent, not reliable, and could confuse the jury. The court overruled the objection, stating that medical personnel are sometimes told "inconsistent things."

Appellate review of error alleged in the admission or exclusion of evidence is limited to an abuse of discretion standard. *Aliff v. Cody,* 26 S.W.3d 309, 314 (Mo.App. W.D.2000). The court's decision to admit or to exclude evidence is given substantial deference on appeal. *Id.*

Generally, hospital records, when properly qualified, are admissible under the Business Records Act. Section 490.680, RSMo (1994). Missouri courts deem certain types of data contained within hospital records admissible, including, but not limited to, those parts of the patient's history inherently necessary or helpful to the observation, diagnosis, and treatment of the patient. *Johnson v. Creative Restaurant Management,* 904 S.W.2d 455, 459 (Mo. App. W.D.1995). Portions of hospital records, including those related to medical history, are admissible unless subject to specific objections such as relevancy, inadequate sources of information, self-serving, going beyond the bounds of legitimate expert opinion, or other similar substantive grounds. *Id.*

Here, plaintiff made no objection to the admission of the medical record based on any of the substantive grounds set forth above, but objected on the basis of the internal inconsistency of the medical record. If plaintiff doubted the accuracy of an entry on the medical record, he could have questioned the individual making the entry. Plaintiff also testified at trial about his version of the incident necessitating the trip to the emergency room in May 1996. It was for the jury to assign the appropriate weight to the evidence on the medical record. The trial court did not abuse its discretion in admitting the medical record into evidence. Plaintiff's third point is denied.

In his fourth point, plaintiff charges error in the trial court's refusal to admit two exhibits, which were photographs of grates over drains in another area of the building. He claims that the

photographs established why the gap was created in the drain of the loading floor where his injury occurred in August 1994, because the grates in the photographs were used to replace the grates in the loading floor and did not fit properly.

█ The admission of photographs into evidence is within the sound discretion of the trial court. *Bellistri v. City of St. Louis*, 671 S.W.2d 405, 407 (Mo.App. E.D. 1984). Here, the excluded photographs did not show the actual area where the injury occurred in August 1994. The photographs depicting the actual area of the August 1994 injury were admitted into evidence. Further, there was no dispute that a gap existed in the grate on the loading floor where plaintiff was injured. The trial court did not abuse its discretion when it excluded the two photographs. Plaintiff's fourth point is denied.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J. and JAMES R. DOWD, J., concur.